UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

KARISSA REID,                                          MEMORANDUM AND ORDER

        Plaintiff,                             12 Civ. 0307 (ILG) (MDG)

    - against -

INGERMAN SMITH LLP and MARY ANNE
SADOWSKI,

        Defendants.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiff Karisa Reid ("Reid" or "plaintiff") brings this diversity action against her
former employer, Ingerman Smith LLP ("Ingerman"), and her former supervisor, Mary
Anne Sadowski ("Sadowski"), alleging New York State Human Rights Law ("NYSHRL")
claims for discrimination on the basis of her sex, aiding and abetting such
discrimination, and retaliation pursuant to N.Y. Exec. Law § 290 et seq.  Defendants
move to dismiss the claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  For the reasons set forth below, defendants' motion is hereby GRANTED in
part and DENIED in part.

## I.  BACKGROUND

       The following facts are taken from Reid's amended complaint and are accepted as
true for purposes of this motion.  Reid, a South Carolina resident, started working for
Ingerman, a New York limited liability partnership, as a legal secretary in February
2008.  Amended Complaint dated Apr. 2, 2012 ("Am. Compl.") ¶¶ 4-5, 11 (Dkt. No. 6).
Reid began working for Sadowski in the summer of 2008 and alleges Sadowski
subjected her to discrimination and harassment on the basis of her gender.  Am. Compl.

1

¶¶ 14, 32, 36-37.  She further alleges that the discrimination and harassment occurred "on a regular and continual basis while employed by Defendants," Am. Compl. ¶ 35, but only includes one example of the illicit conduct in her amended complaint.[1]  According to Reid, in late February or early March 2009, while Reid was waiting in Sadowski's office to receive an assignment, Sadowski suddenly looked at Reid's breasts, "exclaimed 'those things are huge' and then grabbed and squeezed Plaintiff Reid's right breast." Am. Compl. ¶ 16.  After realizing that her actions upset Reid, Sadwoski then dismissed Reid from her office.  Am. Compl. ¶ 18.  Reid viewed the incident, which left her "humiliated and horrified," as a "sexual assault" and "sexual advance," but felt that complaining to Sadowski would be futile.  Am. Compl. ¶¶ 19-20.  She also was afraid to complain to her other supervisor, Susan Gibson ("Gibson"), about the incident because Gibson was Sadowski's close friend and confidante.  Am. Compl. ¶ 23.

As a result of Reid's rejection of Sadowski's sexual advance Sadowski and Gibson allegedly retaliated against her.  Am. Compl. ¶¶ 20-21, 25-27.  Immediately after the incident, Sadowski changed Reid's "entire schedule of duties and arbitrarily withheld work from" her.  Am. Compl. ¶ 20.  She also immediately informed Reid that she should discontinue planning the company summer picnic and assigned the duty to someone else.  Am. Compl. ¶ 21.  With respect to Gibson, on or about April 20, 2009, Gibson "falsely accused Plaintiff Reid of 'sending the wrong letter to a school district'" and even

---

[1] Reid alleges Sadowski would "frequently comment on Plaintiff Reid's style of dress and the way she looked," Am. Compl. ¶ 14, but does not characterize the comments as harassing, simply "awkward," id. ("While Plaintiff Reid found these comments rather awkward, she figured if she simply ignored them Defendant SADOWSKI would eventually stop.").

2

though Reid remembered sending the correct letter and asked for further details concerning the letter incident, the conversation ended there. Am Compl. ¶ 25. Gibson then dismissed Reid from her office, telling her that she would confer with Sadowski about the incident. Am. Compl. ¶ 25. Later that day, Sadowski and Reid met regarding the incident and, without giving Reid a chance to defend herself, Sadowski terminated Reid's employment, telling her "YOU ARE A SMART GIRL. YOU HAVE A LAWSUIT. You are not entitled to unemployment, but we will not fight it." Am. Compl. ¶ 27 (emphasis in original).

Reid relocated to South Carolina after the incident and remains "haunted by the memories and scars from the illegal and unjust harassment and discrimination she suffered." Am. Compl. ¶ 29. As a result of the alleged discrimination and harassment, moreover, she "suffers loss of rights, emotional distress, and loss of income and earnings." Am. Compl. ¶ 40.

On January 18, 2012, Reid began this action. After being granted an extension to do so, defendants on March 26, 2012 filed a motion to dismiss Reid's complaint pursuant to Fed. R. Civ. P. 12(b)(6). On April 3, 2012, Reid filed an amended complaint. Defendants on May 14, 2012 then moved to dismiss the amended complaint as well. Defendants' Memorandum of Law ("Defs.' Mem.") (Dkt. No. 11). Reid on May 18, 2012 filed her opposition papers, and defendants on May 31, 2012 filed their reply. Plaintiff's Memorandum of Law in Opposition ("Pl.'s Opp'n") (Dkt. No. 15-1); Defendants' Reply Memorandum of Law ("Defs.' Reply") (Dkt. No. 16).

## II. DISCUSSION

### A. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a plaintiff alleging employment discrimination need not plead facts sufficient to establish a prima facie case, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), to survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff's pleading must nevertheless contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions" by the plaintiff will not suffice. Id. at 1949 (alteration in original) (internal quotations, citations, and alterations omitted). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).[2]

And, with respect to civil rights claims such as the ones Reid asserts here, the Second Circuit has made clear that courts should be careful to avoid their hasty dismissal.  See, e.g., Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (citations omitted).

## B. Discrimination Claims

Reid's sex discrimination claims are premised on defendants' alleged violation of Section 296.1 of the New York Human Rights Law.  Section 296.1 provides, in relevant part, "It shall be an unlawful discriminatory practice: . . . (a) For an employer . . . because of an individual's . . . sex . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296.1(a) (McKinney 2012).  An individual qualifies as an employer—and thus is subject to individual liability under the provision—"when that individual has an ownership interest in the relevant organization or the 'power to do more than carry out personnel decisions made by others.'"  Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 57 (2d Cir. 2012) (quoting Patrowich v. Chem. Bank, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11, 12 (1984) (per curiam)).[3]

---

[2] Given the requirement that the allegations of the complaint must be accepted as true, may a court ever grant this motion concluding, based on its "judicial experience and common sense" that the claim is not plausible?

[3] Title VII, by contrast, does not permit individual liability.  See, e.g., Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (affirming dismissal of Title VII claims

"[B]ecause New York courts rely on federal law when determining claims under the New York [State] Human Rights Law," the Court will analyze this claim—like all her claims—pursuant to Title VII principles.  Hicks v. Baines, 593 F.3d 159, 164, (2d Cir. 2010) (citing Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1177 (2d Cir. 1996)).[4]

The parties appear to maintain that Reid's discrimination claim can take two forms—"quid pro quo" harassment and "hostile work environment" sexual harassment—but there is no reason to distinguish between the two.[5]  The Supreme Court "has indicated that these labels, to the extent that they are useful at all, are so merely as descriptions of varying workplace conditions that violate [the] basic prohibition on sex discrimination in terms or conditions of employment."  Gregory, 243 F.3d at 698 (citing Burlington Indus. v. Ellerth, 524 U.S. 742, 751-52, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); and Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78-81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)).[6]  Indeed, "there is no reason to create a separate

---

against individual defendants, "because individuals are not subject to liability under Title VII").

[4] Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

[5] The amended complaint does not distinguish between discrimination based on quid pro quo harassment and hostile work environment but the parties' motion papers do.  Defs.' Mem. at 7-14; Pl.'s Opp'n at 5-10; Defs.' Reply at 1-5.

[6] In Burlington Industries, the Supreme Court acknowledged that "[t]he terms quid pro quo and hostile work environment are helpful, perhaps, in making a rough demarcation between cases [where explicit threats are made and carried out and those where they are not]," Burlington, 524 U.S. at 751, but went on to say that "beyond this [the terms] are of limited utility," id.  There are no alleged threats at issue here.

6

doctrinal category for employers who make women's workplace success contingent on submission to a supervisor's sexual demands.  For such a sexual quid pro is just another way in which an employer . . . makes an employee's sex relevant to an employment decision." Id. (citation omitted).  Accordingly, because allegations of "quid pro quo" sexual harassment are just one type of factual allegation that could support a cause of action for discrimination on the basis of sex, the Court will consider Reid's claim of quid pro quo harassment as part of her claim that she was subject to a hostile work environment by virtue of Sadowski's conduct.  See Soliman v. Deutsche Bank AG, No. 03 Civ. 104 (CBM), 2004 WL 1124689, at *10 (S.D.N.Y. May 20, 2004) (considering quid pro quo harassment and hostile work environment claims together); Bennett v. Progressive Corp., 225 F. Supp. 2d 190, 203 (N.D.N.Y. 2002) (same); Yerry v. Pizza Hut of S.E. Kan., 186 F. Supp. 2d 178, 183 (N.D.N.Y. 2002) (same).

To state a claim for a hostile work environment:

> a plaintiff must plead facts that would tend to show the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex.

Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam) (internal quotation marks and punctuation omitted) (citing Gregory, 243 F.3d at 691-92).

## 1. The Alleged Conduct was Because of Reid's Sex

The threshold issue here is whether Sadowski's conduct towards Reid was because of her sex.  Defendants contend that it was not, arguing that all of the allegations in the amended complaint involve Sadowski, a woman, and that "[t]here is absolutely no allegation in the Amended Complaint that the acts alleged were even

tinged with offensive sexual connotation or were gender driven."  Defs.' Mem. at 6.  Reid

simply responds that "sexual harassment can . . . occur where the employee and alleged

harasser are both the same gender."  Pl.'s Opp'n at 5.

In Oncale v. Sundowner Offshore Services, the Supreme Court held that same-sex

discrimination consisting of sexual harassment is actionable under Title VII.  523 U.S.

75, 79, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) ("[W]e hold today that nothing in Title

VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the

plaintiff and the defendant (or the person charged with acting on behalf of the

defendant) are of the same sex.").  And New York courts interpreting Oncale have come

to the same conclusion with respect to the NYSHRL.  See, e.g., Eastport Assocs., Inc. v.

N.Y. State Div. of Human Rights, 71 A.D.3d 890, 891, 897 N.Y.S.2d 177 (2d Dep't 2010)

("'The [NYSHRL] forbids not only opposite-sex sexual harassment in the workplace, but

same-sex sexual harassment as well'" (quoting State Div. of Human Rights v. Stoute, 36

A.D.3d 257, 263, 826 N.Y.S.2d 122 (2d Dep't 2006))).  Thus, a female plaintiff claiming

she was subject to same-sex harassment must show she was harassed because she was

female.  See Oncale, 523 U.S. at 81.  In Oncale, the Supreme Court explained:

> Courts and juries have found the inference of discrimination easy to draw
> in most male-female sexual harassment situations, because the challenged
> conduct typically involves explicit or implicit proposals of sexual activity; it
> is reasonable to assume those proposals would not have been made to
> someone of the same sex. The same chain of inference would be available
> to a plaintiff alleging same-sex harassment, if there were credible evidence
> that the harasser was homosexual.

Oncale, 523 U.S. at 80.  Oncale sets forth three ways that a plaintiff at summary

judgment may show that same-sex harassment constitutes sex discrimination:  (1) by

providing "credible evidence that the harasser was homosexual"; (2) by demonstrating

that the harasser was "motivated by general hostility to the presence of women in the workplace"; or (3) by "offer[ing] direct, comparative evidence about how the alleged harasser treated members of both sexes [differently] in a mixed-sex workplace." Id. at 80-81.  Because Reid is at the motion to dismiss stage, she has no evidentiary burden; however, she still must allege facts sufficient to show her harasser's homosexuality or "gender-based animus." Argeropoulos v. Exide Techs., No. 08 Civ. 3760 (JS), 2009 WL 2132443, at *4 (E.D.N.Y. July 8, 2009) (quoting Simonton v. Runyon, 232 F.3d 33, 37 (2d Cir. 2000)) (treating evidentiary burden for same-sex harassment on summary judgment as a pleading burden necessary to survive a motion to dismiss and dismissing claim where complaint contained no facts to suggest that alleged harassers were homosexual, had hostility to men in the workplace, or treat males differently from females); Borski v. Staten Island Rapid Transit, 04 Civ. 3614 (SLT), 2006 WL 3681142, *2-4 (E.D.N.Y. Dec. 10, 2006) (same).

Reid's amended complaint meets this burden and sufficiently alleges that Sadowski discriminated against her because of her sex.  In reaching this determination, the Court does not—and cannot—credit the amended complaint's conclusory allegations that "Sadowski treated Plaintiff Reid different [sic] (sexually harassed her) solely due to her gender," Am. Compl. ¶ 36, and that "[b]ut for the fact that Plaintiff Reid is a female, Defendant Sadowski would not have treated her different [sic]," Am. Compl. ¶ 37.  Instead, drawing all inferences in Reid's favor as it must, the Court concludes that the amended complaint's characterization of Sadowski's act of grabbing Reid's breast as a "sexual advance" is sufficient to show that Sadowski's conduct was "because  of" Reid's sex.  See Am. Compl. ¶¶ 20, 31-32.  The obvious implication of Reid's use of the term

"sexual advance" is that it was a "homosexual advance," as both Reid and Sadowski are women.  Cf. Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 179 (2d Cir. 2012) (vacating grant of summary judgment on same-sex sexual harassment claim where plaintiff characterized supervisor's repeated touching of her breasts as "homosexual advances" and noting that there was no reason why "a jury, considering the evidence of repeated touching of such gender-specific body parts, would not be permitted to draw the same inference").  Further, one of the inferences that may be drawn from Sadowski's frequent comments to Reid about her style of dress and the way she looked is that they were sexually motivated.  Am. Compl. ¶ 14.

### 2.  The Alleged Conduct was Objectively Hostile & Reid Perceived it to be Abusive

A claim of sexual harassment based on a hostile work environment "requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer."  Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002) (citation and internal quotation marks omitted).  Defendants focus exclusively on the first prong in their brief.  Defs.' Mem. at 11-12.[7]

The required showing with respect to the first prong "has objective and subjective elements:  the misconduct shown must be 'severe or pervasive enough to create an

---

[7] Although not entirely clear, defendants in their reply brief appear to contend that plaintiff fails to allege facts sufficient to support the second prong as well.  Defs.' Reply at 4-5.  As a new argument, it will not be considered.  See, e.g., Martin v. Gantner, 443 F. Supp. 2d 367, 372 n.5 (E.D.N.Y. 2006) (citations omitted).  In any event, defendants cite no authority in support of their contention.

objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Id. at 374 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).  There is no question that Reid perceived the environment to be abusive.  Am. Compl. ¶ 19 ("Plaintiff Reid returned to her desk in a state of fright and disbelief at the extreme and outrageous sexual assault perpetrated upon her by defendant Sadowski.  Moreover, Plaintiff Reid was especially humiliated and horrified, since she knew she had done nothing to solicit or warrant this illegal and unprovoked sexual assault by her direct supervisor.").  Whether the environment was objectively hostile, however, is a closer question.

The incidents of which a plaintiff complains "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Carrero v. N.Y. City Housing Auth., 890 F.2d 569, 578 (2d Cir. 1989) (citation omitted). However, a single act can create a hostile work environment if it in fact works a "transformation of the plaintiff's workplace." Alfano, 294 F.3d at 374 (citations omitted).  In such circumstances, the single act must be "extraordinarily severe." Id.; compare Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000) (single incident of obscene comments by coworker created hostile work environment where comments were made "at length, loudly, and in a large group in which [plaintiff] was the only female and many of the men were her subordinates" and "included charges that [the plaintiff] had gained her rank of lieutenant only by performing fellatio"), and Redd, 678 F.3d at 12 (three instances in which female supervisor respectively brushed, rubbed, and touched female employee's breast sufficiently severe or pervasive to create hostile work environment), with Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998)

11

(supervisor's comment to plaintiff on one occasion that "she had been voted the 'sleekest ass' in the office," and his "deliberat[e] touch[ing] [of her] breasts with some papers that he was holding in his hand" on another occasion, were inadequate to support hostile work environment claim).  Factors guiding the determination of whether a reasonable person would find a work environment sufficiently hostile are:  frequency of the discriminatory conduct; severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  Clark Cnty. School Dist. v. Breeden, 532 U.S. 268, 270-71, 121 S. Ct. 1508, 1509-10 (2001) (citations omitted).

Relying primarily on Green Tree, defendants contend that the single incident alleged here—Sadowski's grabbing of Reid's breast and her comment that Reid's breasts were "huge"—is insufficiently severe to constitute a hostile work environment.  Defs.' Mem. at 12.  The Court disagrees.  While the facts of Green Tree do resemble the allegations here in some superficial respects, they are ultimately distinguishable as the single incident of physical contact that occurred in Green Tree was minimal and relatively unobtrusive.  See Green Tree, 159 F.3d at 763-64 (co-employee "brushed against [plaintiff's] breasts with papers he was carrying").[8]

Here, by contrast, after looking at Reid's breast and exclaiming "those things are huge," Sadowski "grabbed and squeezed" one of Reid's breasts.  Am. Compl. ¶ 16.  Nor did Green Tree involve a situation in which the supervisor physically touched the

---

[8] Also distinguishable is Carter v. State of New York, 151 F. App'x 40, 41 (2d Cir. 2005) (summary order), upon which defendants also rely.  The conduct at issue there merely involved "[t]hree kisses on the cheek in a two-year period," not the intentional touching of an intimate part of the plaintiff's body.

plaintiff with his hands or any other part of his body.  Intentionally grabbing, squeezing, or otherwise feeling an intimate part of another's body is vastly different than brushing against it—whether on purpose or by accident.  See Redd, 678 F.3d at 180 (distinguishing Green Tree on the grounds that "[t]here was no suggestion that [defendant supervisor] had engaged in the substantially more intrusive behavior alleged here, of repeatedly touching her with his hands or any other part of his body, or that he had 'felt' her breasts"); id. (characterizing "brushes" against breast as less severe than rubbing up against or feeling breasts); cf. Vito v. Bausch & Lomb Inc., 403 F. App'x 593, 597 (2d Cir. 2010) (affirming summary judgment on hostile work environment claim where supervisor's "right hand slipped down [from plaintiff's shoulder] and touched her right breast" (emphasis in original)).  Recognizing this distinction, courts have found allegations similar to those here sufficient to withstand both motions to dismiss and for summary judgment.  See, e.g., Guzman v. Macy's Retail Holdings, Inc., No. 09 Civ. 4472 (PGG), 2010 WL 1222044, at *5 (S.D.N.Y. Mar. 29, 2010) (concluding that allegation of sexual advance in which supervisor "pressed—as opposed to brushed—his genitals against" plaintiff employee was sufficient to withstand motion to dismiss (collecting cases)); Scott v. City of N.Y. Dep't of Corr., 641 F. Supp. 2d 211, 226 (S.D.N.Y. 2009) (allegation of sexual advance in which co-worker kissed plaintiff on the mouth twice was sufficient to withstand motion for summary judgment (collecting cases)); Wahlstrom v. Metro-N. Commuter R.R. Co., 89 F. Supp. 2d 506, 521 (S.D.N.Y. 2000) (concluding that allegation that co-worker slapped plaintiff's buttocks was sufficient to withstand summary judgment and noting that "the physical contact between the parties was neither harmless nor accidental" (collecting cases)).

13

The Second Circuit has consistently "cautioned against setting the bar [for a hostile work environment claim] too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of his employment altered for the worse." Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (citing Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000)). Reid has alleged sufficient facts to meet this burden.  Because "'[d]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment,'" Redd, 678 F.3d at 177 (quoting Worth v. Tyer, 276 F.3d 249, 268 (7th Cir. 2001)), and Reid has alleged that Sadowski on a single occasion "grabbed and squeezed" one of Reid's breasts, Am. Compl. ¶ 16, Reid has pleaded facts concerning unwanted sexual contact sufficient to defeat defendants' motion to dismiss.

### C. Aiding and Abetting Claims

Reid next asserts claims against defendants pursuant to N.Y. Exec. Law § 296.6— the NYSHRL's prohibition on aiding and abetting discriminatory acts.  Am. Compl. ¶¶ 50-52.  That provision provides, "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."  N.Y. Exec. Law § 296.6.  The Second Circuit has held that, under section 296.6, employees who are not shown to have any power to do more than carry out personnel decisions made by others, but who actually participate in discriminatory conduct, can still be liable under the NYSHRL.  Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., 524 U.S. at 742.  "An individual may not be held liable, however, merely for aiding and

abetting his own discriminatory conduct but only for assisting another party in violating the NYHRL." Virola v. XO Commc'ns, Inc., No. 05 Civ. 5056 (JG) (RER), 2008 WL 1766601, at *20 (E.D.N.Y. Apr. 15, 2008) (collecting cases); see also Strauss v. N.Y. State Dep't of Educ., 26 A.D.3d 67, 73, 805 N.Y.S.2d 704 (3d Dep't 2005) ("[W]e hold that individuals cannot be held liable under Executive Law § 296(6) for aiding and abetting their own violations of the Human Rights Law.").

Defendants contend that the aiding and abetting claim against Ingerman must be dismissed because, apart from Sadowski, "[n]o other individual or named defendant is alleged as having participated in the alleged discrimination or even to have known about the alleged act." Defs.' Mem. at 13. Reid does not address this argument in her opposition brief. The Court thus deems the claim against Ingerman abandoned, and the motion to dismiss it is granted. See, e.g., Arma v. Buyseasons, Inc., 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (citation and quotation marks omitted)).

The aiding and abetting claim against Sadowski is dismissed as well. Only she is alleged to have participated in the alleged discriminatory conduct, and an individual cannot be held to have aided or abetted his or her own actions. See, e.g., Raneri v. McCarey, 712 F. Supp. 2d 271, 282 (S.D.N.Y. 2010) (concluding that "[a]n individual cannot aid and abet his own alleged discriminatory conduct" and granting summary judgment on § 296.6 claim); Hicks v. Int'l Bus. Machs., 44 F. Supp. 2d 593, 600

(S.D.N.Y. 1999) (granting 12(b)(6) motion on § 296.6 claim against alleged harasser "on the [theory] that the primary actor cannot be an aider and abettor of his own actions").[9]

In sum, defendants' motion to dismiss Reid's aider and abettor claims under § 296.6 is granted.

### D. Retaliation Claims

Reid next asserts retaliation claims against defendants pursuant to N.Y. Exec. Law § 296.7.  Am. Compl. ¶¶ 53-55.  N.Y. Exec. Law § 296.7 provides, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."  As with Reid's discrimination claim, Title VII principles govern this claim as well.  See, e.g., Hicks, 593 F.3d at 164 ("All of plaintiffs' retaliation claims are analyzed pursuant to Title VII principles.").

---

[9] Although the precise meaning of the Second Circuit's Tomka decision—which neither party cites in its papers—is the subject of the controversy among district courts, see, e.g., Nicholson v. Staffing Auth., No. 10 Civ. 2332 (JLC), 2011 WL 344101, at *3 n.35 (S.D.N.Y. Feb. 1, 2011) (collecting cases), the issue that divides the courts is not present in this case as Sadowski is alleged to be Reid's supervisor and thus is subject to individual liability under § 296.1.  See Chamblee v. Harris & Harris, Inc., 154 F. Supp. 2d 670, 677 (S.D.N.Y. 2001) (Tomka not implicated where alleged harasser was plaintiff's supervisor).  Tomka addressed the scope of individual liability for individuals who are not supervisors—individuals who are not shown to have any power to do more than carry out personnel decisions made by others—a situation not present here.  Tomka, 66 F.3d at 1317; see also Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004) (noting that Tomka found § 266.6 "allowed a co-worker who 'actually participates in the conduct giving rise to a discrimination claim' to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff" (quoting Tomka, 66 F.3d at 1317)).

Accordingly, in order to establish a prima facie case of retaliation, a plaintiff must demonstrate that "'(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.'" Gregory, 243 F.3d at 700 (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)).  While Reid need not specifically plead every element of a prima facie case to survive a motion to dismiss, see Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 71-72 (2d Cir. 2006) (holding that Swierkiewicz applies to retaliation claims), Reid must nevertheless plead facts sufficient to render her retaliation claims plausible.

Defendants contend that Reid's claims must be dismissed because she failed to complain to anyone about Sadowski's alleged conduct.  Defs.' Mem. at 15.  Defendants thus appear to argue that Reid has failed to sufficiently allege that she has engaged in a "protected activity."  Reid does not directly address this argument in her opposition brief and instead focuses on the other elements of her retaliation claim.  Pl.'s Opp'n at 11-12.[10]

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."  Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000).  "When an employee communicates to her employer a belief that the

---

[10] Reid argues that she "objected to Defendant Sadowski's sexual harassment," and cites to paragraph 17 of the amended complaint in support of this statement.  Pl.'s Opp'n at 12.  But paragraph 17 simply provides that "Plaintiff Reid was practically frozen in a state of shock and horror after being sexually abused by her direct supervisor, Defendant Sadowski.  It was clear that Plaintiff Reid was not going to accept this blatantly unlawful behavior."  Am. Compl. ¶ 17.

employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." <u>Crawford v. Metro. Gov't of Nashville & Davidson Cnty.</u>, 555 U.S. 271, 129 S. Ct. 846, 850, 172 L. Ed. 2d 650 (2009) (concluding that an employee can "oppose" discrimination by responding to coworker's questions about discrimination, even if she did not initiate discussion, and noting that "oppose," left undefined by the statute, carries its ordinary meaning).[11]  The law thus protects "employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including making complaints to management, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." <u>Gregory</u>, 243 F.3d at 700-01 (internal citations and quotation marks omitted); <u>see also</u> <u>Correa v. Mana Prods., Inc.</u>, 550 F. Supp. 2d 319, 327 (E.D.N.Y. 2008) (noting that protected activities include "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry, and expressing support of co-workers who have filed formal charges" (citing <u>Sumner v. U.S. Postal Serv.</u>, 899 F.2d 203, 209 (2d Cir. 1990)).

The amended complaint contains no allegation that Reid took any action in response to Sadowski's alleged harassment.  Reid does not allege that she informed Ingerman management or human resources personnel at the firm about the alleged harassment she suffered at Ingerman.  Further, she acknowledges she did not complain

---

[11] In a concurring opinion, Justice Alito emphasized that in his view the majority's holding "does not and should not extend beyond employees who testify in internal investigations or engage in analogous purposive conduct."  <u>Id.</u> at 281 (Alito, J., concurring).

or even threaten to complain to Gibson, her other supervisor.  See Am. Compl. ¶ 23 ("Reid couldn't complaint to Defendant Sadowski, as she knew it would be futile to complain to her about her own illegal behavior.  Furthermore, Plaintiff Reid was afraid to complain to her other supervisor, Susan M. Gibson, as she knew Ms. Gibson was a close friend and confidant of Defendant Sadowski.").  Instead, she alleges that she rejected Sadowski's sexual advances, and it was for this reason that Sadowski retaliated against her.  Am. Compl. ¶¶ 20-21.

Although neither party provides briefing on the issue, whether rejecting a harasser's sexual advances constitutes a "protected activity" for retaliation purposes is an open question in the Second Circuit,[12] see Fitzgerald v. Henderson, 251 F.3d 345, 366 (2d Cir. 2001) ("We need not rule on the district court's view that rejection of sexual advances is not a protected activity under Title VII."), and an object of debate among district courts in the circuit (and around the country), compare Little v. Nat'l Broad. Co., Inc., 210 F. Supp. 2d 330, 386 (S.D.N.Y. 2002) ("[R]ejecting sexual advances from an employer does constitute 'protected activity'.  The prohibition against retaliation is intended to protect employees who resist unlawful workplace discrimination.  Sexual harassment by an employer or supervisor is an unlawful practice, and an employee's refusal is a means of opposing such unlawful conduct."), and Johnson v. Medisys Health Network, No. 10 Civ. 1596 (ERK) (VP), 2011 WL 5222917, at *15 (E.D.N.Y. June 1, 2011)

---

[12] Both the Fifth and Eighth Circuit have addressed the issue, and their conclusions are at odds.  Compare LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 389 (5th Cir.  2007) (rejection of sexual advances not protected activity), with Ogden v. Wax Works, Inc., 214 F.3d 999, 1007 (8th Cir. 2000) (rejection of sexual advances is "the most basic form of protected activity").

(noting split in authority and following Little), with Del Castillo v. Pathmark Stores, Inc., 941 F. Supp. 437, 438-39 (S.D.N.Y. 1996) (concluding that "even the broadest interpretation of a retaliation claim cannot encompass instances where the alleged 'protected activity' consists simply of declining a harasser's sexual advances, which is all that is alleged here by way of 'protected activity'"), and Fitzgerald v. Henderson, 36 F. Supp. 2d 490, 499 (N.D.N.Y. 1998), aff'd in part, rev'd in part on other grounds, 251 F.3d 345 (2d Cir. 2001) (following Del Castillo and Rashid v. Beth Israel Med. Ctr., No. 96 Civ. 1833 (AGS), 1998 WL 689931, at *2 (S.D.N.Y. Oct. 2, 1998)).

The Court adopts the view that the rejection of sexual advances does not constitute a protected activity.  If resisting the advances of a harasser constitutes a "protected activity," then "every harassment claim would automatically state a retaliation claim as well." Del Castillo, 941 F. Supp. at 439.  Moreover, one of the key purposes of the retaliation provisions in anti-discrimination statutes such as Title VII and the NYSHRL is "preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the [statute's] basic guarantees." Burlington, 548 U.S. at 61.  But if one makes no effort to secure or advance the guarantees of an anti-discrimination statute by taking any action in response to allegedly discriminatory conduct, there can be nothing for the employer to interfere with.

Approximately three years have elapsed between the claimed unlawful conduct and the filing of this lawsuit.[13]  Requiring an employee to do more than simply rejecting

---

[13] One can only speculate as to why Reid never sought to enlist the aid of the E.E.O.C. or commence an action pursuant to Title VII or waited until the eve of the expiration of the statute of limitations before commencing this action.

a sexual advance to satisfy the "protected activity" requirement also serves the salutary purpose of informing the employer of alleged discriminatory conduct in the workplace thus enabling the employer to take such corrective measures as may be necessary.  That Reid for nearly three years did nothing more than having rebuffed the alleged offender also drives the Court to conclude that Reid has failed to plead plausible retaliation claims against the defendants and those claims are dismissed.

### III.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED as to Reid's retaliation and aiding and abetting claims and DENIED as to her discrimination claims.  Because Reid has already amended her complaint once, and because any further amendment would be futile, dismissal is with prejudice.

SO ORDERED.

Dated:        Brooklyn, New York
              July 5, 2012


                                    _____/s/_____
                                    I. Leo Glasser
                                    Senior United States District Judge